**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| JAMES W. MYART, JR., | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | Civil Action No.  SA-14-CV-831-XR |
| | § | |
| JACQUELINE PARKER GLOSSON, | § | |
| EDWIN NORMAN GLOSSON, AND | § | |
| SPECIALIZED LOAN SERVICING, LLC, | § | |
| | § | |
| *Defendants.* | § | |

**ORDER**

On this day the Court considered Defendant Specialized Loan Servicing, LLC's (SLS),

"motion for judgment on the pleadings" (docket no. 50) and motion for reconsideration (docket

no. 52) of the court's previous order dismissing Plaintiff James Myart's claims without prejudice

(docket no. 48).  After careful consideration, the Court will deny the motion for judgment on

pleadings.  The Court will grant the motion for reconsideration and dismiss Myart's claims

against SLS with prejudice.

**I.      Background**

Plaintiff James Myart filed his original petition *pro se* in the 438th Judicial District of

Bexar County, Texas against Jacqueline Parker Glosson, his ex-wife, Edwin Norman Glosson,

her current husband, and SLS a mortgage servicer, on August 28, 2014.  Myart filed his first

amended petition in state court on September 4, 2014 and the second amended petition in state

court on September 11, 2014.  Docket no. 1-4.  Defendant SLS removed the case to federal court

pursuant to 28 U.S.C. § 1441 based on federal question jurisdiction on September 17, 2014.

Docket no. 1.  The Court granted Myart leave to file a third amended complaint on November 20, 2014.  Docket no. 12.  All three complaints centered around Myart's allegations that Ms. Glosson conspired with her new husband to deceive Myart into giving Ms. Glosson the property located 306 Preston Avenue, San Antonio, Texas (the "Property") by promising that Ms. Glosson would reunite with Myart romantically.  Myart and Jacqueline Glosson executed a Note and Deed of Trust associated with the Property in 1988, and that loan was modified in 1994.  SLS is the holder of that loan.  Myart stated that he never signed the modification; but that the Glossons forged his signature and SLS negligently or intentionally failed to validate his signature or take other steps to confirm he agreed to the modification.

On March 30, 2015, SLS filed a motion to compel discovery responses against Myart, (docket no. 34), which the Magistrate Judge granted in part and denied in part after Myart did not respond to the motion.  The Magistrate Judge ordered Myart to comply with written discovery requests on or before April 23, 2015.  Docket no. 35.  When Myart did not comply, SLS filed a motion for contempt and for entry of an order to show cause.  Docket no. 36.  Myart did not respond to the motion for contempt, either.

On May 11, 2015, the Magistrate Judge issued a Report and Recommendations, recommending SLS's motion for sanctions be denied, but ordering Myart to show cause as to why his third amended complaint should not be "dismissed with prejudice based on [his] failure to timely prosecute his case pursuant to Federal Rule of Civil Procedure 41."  Docket no. 40 at 10.  In her report, the Magistrate Judge explained that "on April 27, 2015, Mr. Myart filed another lawsuit in this Court—a petition for writ of habeas corpus—which, among other things, represents that Myart is residing in the Bexar County Adult Detention Center as a pretrial detainee."  *Id*. at 8.  Concluding that Myart may not have been receiving service while in jail, the

Magistrate Judge ordered that her report and other documents be sent to Myart's listed address and to him in jail.  The Magistrate Judge determined she could not sanction Myart when he may not have been aware SLS had sent him discovery.  *Id*.  at 8-10.

The Clerk sent the Magistrate Judge's Report and Recommendations to Myart on May 12, 2015.  It was received on May 18, 2015.  Docket no. 44.  Myart had 14 days to respond to the Magistrate Judge's show cause order.   He again failed to respond.   The Court adopted the recommendation to deny sanctions on June 4, 2015.  Docket no. 48 at 3.  In that Order, the Court also dismissed Myart's claims without prejudice for want of prosecution and for failure to comply with the Magistrate Judge's order to respond.  *Id*. at 3-4.  The Court exercised restraint and did not dismiss Myart's claims with prejudice because it viewed that action as too harsh given Myart's unfortunate circumstances.

Later on June 4, SLS filed the motion for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c).  Docket no. 50.  The motion asked the Court to dismiss all ten of Myart's claims against SLS with prejudice, and for judgment on its counterclaim for attorney's fees and costs under the deed of trust.  *Id*. at 1.  On June 5, the Court received a motion from Myart in prison to dismiss his claims with prejudice.  Docket no. 51.  The Court dismissed Myart's motion as moot because it had already dismissed his claims without prejudice.

SLS then filed a motion to reconsider the Court's dismissal without prejudice, arguing its motion for judgment on the pleadings and Myart's motion for dismissal with prejudice are enough that the Court should reconsider claims it dismissed, and that the Court should utilize the "any other reason that justifies relief" provision of Fed. R. Civ. P. 60(b)(6).  Docket no. 52.  SLS seeks to protect itself from later litigation by Myart on what it calls "meritless" claims. Myart responded from prison to the motion for reconsideration and the motion for judgment on

pleadings, arguing that the portions of the motion for judgment on the pleadings addressing his claims are moot and the Court should not reconsider its previous dismissal without prejudice, while alleging to "withdraw" his already mooted motion to dismiss with prejudice (docket no. 51).  Docket no. 53.  Myart does not address the counterclaim in his response except to say that the Court should deny all relief sought by SLS.  *See* docket no. 53.  SLS then replied, arguing Myart's indication that he would "soon" be able to prosecute the case and desire to hold the defendants responsible in his response is more evidence the Court should revisit its dismissal without prejudice, as Myart would be free to pursue "meritless" claims without a dismissal with prejudice, especially because Myart himself requested they be dismissed with prejudice.

## II.      Analysis

### A.  SLS's Motion to Reconsider

After careful consideration, the Court dismisses as moot the portions of SLS's motion for judgment on the pleadings that would have the Court dismiss Myart's claims with prejudice (docket no. 50).  Next, the Court GRANTS SLS's motion for reconsideration (docket no. 52) pursuant to the "any other reason that justifies relief" provision of Fed. R. Civ. P. 60(b)(6) because justice and equity require it.  *See Klapprott v. United States*, 335 U.S. 601, 614–15 (1949) ("[T]he language of the 'other reason' clause, for all reasons except the five particularly specified [in FRCP 60(b)(1) through 60(b)(5)], vests power in courts adequate to enable them to vacate judgments whenever such action is appropriate to accomplish justice."); *Bros. Inc. v. W. E. Grace Mfg. Co.*, 320 F.2d 594, 608 (5th Cir. 1963) (Fed. R. Civ. P. 60(b)(6) "must mean to make available those grounds which equity has long recognized as a basis for relief." (citing 3 Barron & Holtzoff, Federal Practice & Procedure §§ 1323, 1329 (Wright ed. 1958)); *Shoshone-Bannock Tribes of Fort Hall Reservation v. Leavitt*, 408 F. Supp. 2d 1073, 1080 (D. Or. 2005)

(stating the "other reason" clause "untethers the discretion of judges from the constraints of common law remedies and grants broad remedial power to vacate judgments where justice so requires").

The Court VACATES its dismissal without prejudice and judgment on Myart's claims in the third amended complaint against SLS.  Docket nos. 48 and 49.  The dismissal without prejudice stands against Defendants Jacqueline Parker Glosson and Edwin Norman Glosson. Next, considering Myart's voluntary motion to dismiss with prejudice (docket no. 51), which he certainly mailed to the Court when his claims were still live, and the other circumstances of this case, including Myart's dilatory actions in discovery and failure to respond to a court order, the Court DISMISSES WITH PREJUDICE all of Myart's claims in the third amended complaint against SLS.

### B.  SLS's Counterclaim

The only issue remaining in this case is SLS's counterclaim.  In its original answer, SLS stated, "In conjunction with the terms of the Note and Deed of Trust, Defendant seeks recovery of its reasonable and necessary attorneys' fees, witness fees, costs, fees of experts and deposition expenses, if any."  Docket no. 20 at ¶ 61.  SLS argues "Section 7 of the Deed of Trust (Exhibit "B") provides that the Lender shall be entitled to collect all expenses, including attorneys' fees, incurred in pursuing the remedies provided therein including, but not limited to, reasonable attorneys' fees and costs.  The Deed of Trust further provides that expenses, including attorneys' fees, incurred by [SLS] in protecting its rights in the Property and/or under the Security Instrument become additional debt of the Borrower."  Docket no. 50 at 27; *see* Ex. B (the deed of trust signed by Myart on May 26, 1987).

SLS appears to rely on Paragraph 7 of the Deed of Trust, which reads:

> **Protection of Lender's Interest in the Property and Rights:** If Borrower fails to perform the covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect [SLS's] rights in the Property (such as a proceeding in bankruptcy, probate, for condemnation to enforce laws or regulations), then [SLS] may do and pay for whatever is necessary to protect all the value of the Property and [SLS's] rights in the Property.  [SLS's] actions may include paying sums secured by a lien which has priority over this Security Instrument, appearing in court, paying reasonable attorneys' fees and entering on the Property to make repairs.  Although [SLS] may take action under this paragraph 7, [SLS] does not have to do so.
>
> Any amounts disbursed by lender under paragraph 7 shall become additional debt of Borrower secured by this Security Instrument.  Unless Borrower and [SLS] agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice . . . requiring payment.

Docket no. 50, Ex. B ¶ 7.[1]

SLS cites to *Richardson v. Wells Fargo Bank, N.A.*, 740 F.3d 1035, 1038 (5th Cir. 2014), arguing it involved a deed of trust with "identical language" and the Fifth Circuit found "that a prevailing lender should recover attorneys' fees and costs based on identical language contained in the Deed of Trust."  Docket no. 50 at 28.  *Richardson* is not directly on point.  First, the provision in *Richardson* is similar, but not identical to the one here.  It provided:

> **Protection of Lender's Interest in the Property and Rights:** Under this Security Instrument. If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument . . . , or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument.... Lender's actions can include, but are not limited to: (a) paying any sums secured

---

[1] The other potentially relevant section of the Deed of Trust is paragraph 19, which provides SLS:

> Shall give notice to Borrower prior to acceleration following borrower's breach of any covenant or agreement in this Security Instrument . . . . If the default is not cured on or before the date specified in the notice, [SLS] at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by applicable law. [SLS] shall be entitled to collect all expenses incurred in pursuing the remedies provided in paragraph 19, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

*Id.* at ¶ 19.  But paragraph 19 only provides fees for when the lender pursues acceleration and foreclosure, which did not occur here.

> by a lien which has priority over this Security Instrument; (b) appearing in court;
> and (c) *paying reasonable attorneys' fees to protect its interest in the Property
> and/or rights under this Security Instrument.*

*Richardson*, 740 F.3d at 1038 (emphasis original).  Second, *Richardson* was a lawsuit brought by a foreclosed borrower against a bank that foreclosed and sought to evict him.  The court reversed the trial court and held that the bank was entitled to damages under Fed. R. Civ. P. 54(d)(2)[2], and that attorneys' fees in that context need not be proven at trial like other damages under Texas law.  *Id*. at 1037-38.  The court reasoned:

> The Advisory Committee Notes indicate that Rule 54(d)(2) is inapplicable "to fees recoverable as an element of damages, as when sought under the terms of a contract." Fed. R. Civ. P. 54(d)(2) (1993 Advisory Committee Notes). The Notes set no bright-line rule that fees sought under the terms of "*any* contract" or "*all* contracts" must be considered damages. Instead, attorney's fees provided by contract are an example of fees that *might* be recoverable as an element of damages. The language of the contract and the nature of the claim are the dispositive factors concerning whether the fees are an element of damages or collateral litigation costs. Moreover, the Seventh and Eleventh Circuits have rejected [a] blanket prohibition against Rule 54(d)(2) motions to recover fees provided by contract. Those circuit courts considered the text of Rule 54(d)(2) and the Advisory Committee Notes and concluded that, in appropriate situations, contractual attorney's fees may be pursued under Rule 54(d)(2). *Rissman v. Rissman,* 229 F.3d 586, 587–88 (7th Cir. 2000) (holding that the party seeking contractual attorney's fees is entitled to a decision on the merits); *Capital Asset Research Corp. v. Finnegan,* 216 F.3d 1268, 1270 (11th Cir. 2000) (per curiam) (same). For the reasons stated immediately above, we agree that motions for attorney's fees provided by contract are permissible under Rule 54(d)(2).

*Id*. at 1039-40.

Third, *Richardson* was not about recovering attorneys' fees when a borrower brings suit for civil rights violations, predatory lending, fraud in obtaining his signature, and other causes of action outside the foreclosure context, as this case is.

---

[2] Fed. R. Civ. P. 54(d)(2) states, "A claim for attorney's fees and related nontaxable expenses must be made by motion unless the substantive law requires those fees to be proved at trial as an element of damages

SLS also cites *In re Velazquez*, 660 F.3d 893, 899-900 (5th Cir. 2011), arguing it demonstrates the "Fifth Circuit holds that similar language in loan documents entitles a lender to recover attorneys' fees and costs 'reasonably and appropriately incurred' in protecting its rights under a Security Instrument."  However, that case is not directly on point either, as the language in that deed of trust, and this one, specifically lists "bankruptcy" proceedings as a legal proceeding that would significantly affect the lender's interest in the property at issue.  *See id*. Additionally, all of the other cases cited by SLS to support an award of attorneys' fees were suits by borrowers against banks or loan servicers to stop a foreclosure or to rescind wrongful foreclosures.  *See Perri v. Wells Fargo Bank, N.A.*, No. 4:11-cv-04018 [Docket No. 53]; (S.D. Tex. April 17, 2013, J. Milloy); *see also May v. Wells Fargo Bank, N.A.,* No. 4:11–3516, 2013 WL 4647673, at *5 (Aug. 29, 2013) (holding a bank was entitled to reasonable attorneys' fees under a deed of trust under a very similar provision entitled "Protection of Lender's Interest in the Property and Rights Under this Security Instrument" after a foreclosure occurred); *Serna v. U.S. Bank, N.A.*, No. CIV.A. H-13-2559, 2014 WL 108732, at *4 (S.D. Tex. Jan. 9, 2014) (same); *Gossett v. Federal Home Loan Mortg. Corp.*, 919 F. Supp.2d 852, 862 (S.D. Tex. 2013) (a suit for breach of contract, wrongful foreclosure, and Texas law causes of action following an acceleration and foreclosure).

SLS cites no cases where a provision like paragraph 7 of the Deed of Trust led to an award of attorneys' fees with similar facts and posture to this case, i.e. where a plaintiff/co-signor is suing the lender and his co-signor, who is current on her payments, for various fraud and predatory lending causes of action and does not involve a foreclosure; and the Court finds none.  *See also Jeanbaptiste v. Wells Fargo Bank*, N.A., No. 3:14-CV-0264-K, 2014 WL

6790737, at *1 (N.D. Tex. Dec. 1, 2014) (granting attorneys' fees based on same language when claims arose from the foreclosure of the plaintiff's home).

Further, Myart's actions do not appear to be covered by the relevant language of the Deed of Trust in paragraph 7, because SLS was not paying attorneys' fees in a legal proceeding that would have significantly affected its rights in the Property under the Deed of Trust.  Paragraph 7 concerns certain types of legal proceedings that might threaten SLS's rights "such as a proceeding in bankruptcy, probate, for condemnation to enforce laws or regulations."  This list, while not exhaustive, does not mention any normal suits or causes of action at law such as fraud, misrepresentation, predatory lending, etc.  Second, unlike the cases SLS cited to that the Court already distinguished, the occupant of the Property is, as far as the Court is aware, paying on the Note.  The proceedings in this Court did not affect or threaten any "right" SLS has in the Property because it is being paid on the Note.  The language of paragraph 7 of the Deed of Trust thus does not contemplate granting attorneys' fees given the facts and posture of this case.

Finally, the Court will deny SLS's counterclaim because granting attorneys' fees may inadvertently injure the occupant of the Property and a prevailing party in this case – Jacqueline Parker Glosson. SLS asks the Court to grant its claim against Myart for the reasonable attorneys' fees it expended defending the lawsuit, but paragraph 7 only provides: "Any amounts disbursed by lender under paragraph 7 shall become additional debt of Borrower secured by this Security Instrument.  Unless Borrower and [SLS] agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice . . . requiring payment."  Any fee award would be "additional debt of Borrower."  In the cases SLS cites in its brief, that "Borrower" is only the party bringing the lawsuit.  *See Gossett*, 919 F. Supp.2d at 854 (where the Gossets were the plaintiffs and the borrowers under

the contract); *May*, 2013 WL 4647673, at *1 (where the plaintiffs, the Mays, were also the borrowers under the contract). Here, the "Borrower" that might be liable for the "additional debt" would apparently be Jacqueline Glosson, a prevailing party in this case. It would be inequitable to award fees in this case against Myart and have them potentially added to the debt Glosson owes on the Property.

For all these reasons, the Court denies SLS's counterclaim for attorneys' fees.

### III.      Conclusion

Therefore, the Court DENIES Defendant SLS's motion for judgment on pleadings (docket no. 50), and GRANTS SLS's motion for reconsideration (docket no. 52). Plaintiff's claims against SLS are DISMISSED WITH PREJUDICE. Inasmuch as all claims and counterclaims are disposed of in this case, the Clerk is instructed to close the file.

It is so ORDERED.

SIGNED this 16th day of July, 2015.

_____
XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE